## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | | |
|---|---|---|
| YANKEE SPRINGS MEADOW FSPE LLC, a Delaware Limited Liability Company; | ) ) ) | FILED: MAY 30, 2008 08CV3139 |
| Plaintiff, | ) ) | JUDGE DARRAH MAGISTRATE JUDGE COLE |
| vs. | ) ) | No. |
| MOBILE HOME PARK SERVICES, INC., a Georgia corporation; PATRICK McKEE, a citizen of Georgia; and WILLIAM S. DALTON, a citizen of Oklahoma, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### COMPLAINT

Plaintiff YANKEE SPRINGS MEADOW FSPE LLC, a Delaware Limited Liability Company ("Yankee Springs"), through its attorneys, Mitchell Bryan and Adam B. Rome of Levenfeld Pearlstein, LLC, for its Complaint against defendants MOBILE HOME PARK SERVICES, INC., Georgia corporation ("MHPS"); PATRICK McKEE, a citizen of Georgia ("McKee"); and WILLIAM S. DALTON, a citizen of Oklahoma ("Dalton"), states as follows:

### PRELIMINARY STATEMENT

1.    Yankee Springs brings this action to collect more than $202,500 MHPS owes Yankee Springs under a December 21, 2006 Promissory Note and Security Agreement ("Note"), which is currently in default (Count I), and which both of McKee and Dalton jointly and severally owe Yankee Springs under their respective December 21, 2006 written guarantees of MHPS's obligations under the Note.

### PARTIES

2.    Yankee Springs is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois. Yankee Springs is a citizen of Illinois and States other than

Georgia and Oklahoma because its LLC Member is Yankee Springs, L.L.C., a Michigan Limited Liability Company whose sole member is Hometown Communities Limited Partnership, a Maryland Limited Partnership whose General Partner is Hometown Communities, L.L.C., a Maryland Limited Liability Company whose members are individuals citizens of States other than Georgia and Oklahoma and an LLC member whose own LLC members and sub-members are a governmental entity (Washington State Investment Board) that is a citizen of Washington State and individuals all of whom are citizens of Illinois.

3.      MHPS is a Georgia corporation, and is a citizen of Georgia with its principal place of business in Columbus, Georgia.

4.      McKee is an individual who is a citizen of Georgia residing in Columbus, Georgia.

5.      Dalton is an individual who is a citizen of Oklahoma residing in Tulsa, Oklahoma.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332 (a)(1) and (c)(1), because Yankee Springs (including its LLC Member) and all defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over defendants, all of whom are non-residents of Illinois, because MHPS consented to the jurisdiction of this Court pursuant to the second to last paragraph of the Note, and both McKee and Dalton consented to the jurisdiction of this Court pursuant to paragraph 15 of their respective written guaranties.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and (3), because a substantial part of the events giving rise to the claim occurred in this district, and

because MHPS consented to venue in this District pursuant to the second to last paragraph of the Note, and both McKee and Dalton consented to venue in this District pursuant to paragraph 15 of their respective written guaranties.

## COUNT I

### (Claim Against MHPS for Breach of the Note)

9.      Yankee Springs repeats and incorporates the allegations in paragraphs 1-8 of this Complaint as paragraph 9 of this Count I.

10.     MHPS executed the Note on or about December 21, 2006, in connection with its purchase of Yankee Springs Mobile Home Park in Yankee Springs, Michigan from Yankee Springs. The principal amount of the Note is $533,572.52 payable together with pre-maturity interest at the rate defined therein and, after March 21, 2007 ("Maturity Date"), post-maturity interest at a stated escalated rate. A copy of the Note is attached hereto as *Exhibit A*.

11.     As of May 2, 2008, the amount of $202,500 (which included principal, pre-default interest, and default interest accruing after the Maturity Date) was then due and outstanding pursuant to the Note, and MHPS had failed to repay Yankee Springs all or any part thereof.

12.     The Note is a valid, enforceable instrument which, despite demand for payment thereunder by letter of Yankee Springs's counsel dated May 2, 2008, MHPS breached the terms thereof by defaulting in payment. A copy of the foregoing demand letter is attached hereto as *Exhibit B*.

13.     As of the date of this Complaint, under the Note there remains due and owing from MHPS to Yankee Springs the principal amount of $202,500 plus additional default interest at the per diem rate of $55.48 from and after May 9, 2008, contractual attorneys' fees and costs (pursuant to the eighth paragraph of the Note).

14.    As a direct and proximate result of MHPS's default in payment due and owing to Yankee Springs pursuant to the Note, Yankee Springs has been damaged in the principal amount of $202,500, plus additional default interest and contractual attorneys' fees and costs.

WHEREFORE, plaintiff YANKEE SPRINGS MEADOW FSPE, LLC prays for  entry of judgment on this Count I in its favor and against defendant MOBILE HOME PARK SERVICES, INC. in the principal amount of $202,500 plus interest, attorneys' fees, court costs and for such other and further relief as this Court deems just and proper.

**COUNT II**

**(Action Against McKee for Breach of Guaranty)**

15.    Yankee Springs repeats and incorporates the allegations in paragraphs 1-9 of this Complaint as paragraph 15 of this Count II.

16.    On or about December 21, 2006, McKee executed and delivered to Yankee Springs a written Guaranty bearing that date ("McKee Guaranty"), by which he unconditionally guaranteed payment of the Note.  A copy of the McKee Guaranty is attached hereto as *Exhibit C*.

17.    As of May 2, 2008, the amount of $202,500 (which included principal, pre-default interest, and default interest accruing as of the Maturity Date) was then due and outstanding pursuant to the Note, and McKee had failed to repay Yankee Springs all or any part thereof.

18.    The Note and McKee Guaranty are valid, enforceable agreements which, despite demand for payment thereunder by letter of Yankee Springs's counsel dated May 2, 2008 (*Exhibit B* hereto), MHPS and McKee, respectively, breached the respective terms thereof by defaulting in payment.

19.    As a direct and proximate result of MHPS's default in payment due and owing to Yankee Springs pursuant to the Note, and McKee's default in payment of MHPS's indebtedness to Yankee Springs as required by the McKee Guaranty, Yankee Springs has been damaged in the

4

principal amount of $202,500 plus additional default interest at the per diem rate of $55.48 from and after May 9, 2008, plus contractual attorneys' fees and costs (pursuant to the eighth paragraph of the Note and paragraph 1 of the McKee Guaranty).

WHEREFORE, plaintiff YANKEE SPRINGS MEADOW FSPE, LLC prays for entry of judgment on this Count II in its favor and against defendant PATRICK McKEE in the principal amount of $202,500 plus interest, attorneys' fees, court costs and for such other and further relief as this Court deems just and proper.

### COUNT III

### (Action Against Dalton for Breach of Guaranty)

20.    Yankee Springs repeats and incorporates the allegations in paragraphs 1-9 of this Complaint as paragraph 20 of this Count III.

21.    On or about December 21, 2006, Dalton executed and delivered to Yankee Springs a written Guaranty bearing that date ("Dalton Guaranty"), by which he unconditionally guaranteed payment of the Note. A copy of the Dalton Guaranty is attached hereto as *Exhibit D*.

22.    As of May 2, 2008, the amount of $202,500 (which included principal, pre-default interest, and default interest accruing as of the Maturity Date) was then due and outstanding pursuant to the Note, and Dalton had failed to repay Yankee Springs all or any part thereof.

23.    The Note and Dalton Guaranty are valid, enforceable agreements which, despite demand for payment thereunder by letter of Yankee Springs's counsel dated May 2, 2008 (*Exhibit B* hereto), MHPS and Dalton, respectively, breached the respective terms thereof by defaulting in payment.

24.    As a direct and proximate result of MHPS's default in payment due and owing to Yankee Springs pursuant to the Note, and Dalton's default in payment of MHPS's indebtedness to Yankee Springs as required by the Dalton Guaranty, Yankee Springs has been damaged in the

principal amount of $202,500 plus additional default interest at the per diem rate of $55.48 from and after May 9, 2008, and contractual attorneys' fees and costs (pursuant to the eighth paragraph of the Note and paragraph 1 of the Dalton Guaranty).

WHEREFORE, plaintiff YANKEE SPRINGS MEADOW FSPE LLC prays for entry of judgment on this Count III in its favor and against defendant WILLIAM S. DALTON in the principal amount of $202,500 plus interest, attorneys' fees, court costs and for such other and further relief as this Court deems just and proper.

**YANKEE SPRINGS MEADOW FSPE LLC**

By: /s/ Mitchell Bryan
     One of its Attorneys

Mitchell Bryan (ARDC # 6183011)
Adam B. Rome (ARDC # 6278341)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380 – Telephone
(312) 346-8434 – Facsimile
E-mail: mbryan@lplegal.com
E-mail: arome@lplegal.com

08CV3139
JUDGE DARRAH
MAGISTRATE JUDGE COLE

# EXHIBIT A

## PROMISSORY NOTE
## AND SECURITY AGREEMENT

December 21, 2006

Amount:          $533,572.52

Maturity:        March 21, 2007 (the "Maturity Date")

FOR VALUE RECEIVED, on or before the Maturity Date, **MOBILE HOME PARK SERVICES, INC.**, a Georgia corporation ("Borrower") promises to pay to the order of **YANKEE SPRINGS MEADOW FSPE, LLC**, a Delaware limited liability company ("Lender"), the sum of FIVE HUNDRED THIRTY-THREE THOUSAND FIVE HUNDRED SEVENTY-TWO DOLLARS and 52/100 ($533,572.52) or such lesser principal amount as may be outstanding from time to time at the office of the Lender, or at such location as any legal holder hereof shall designate in the following amounts:

$100,000.00 due and payable on January 4, 2007
$433,572.52 due and payable on the Maturity Date

Borrower may prepay all or any part of the principal balance of this Note prior to the Maturity Date, without penalty or premium.

In the event Borrower fails to pay any amount due hereunder on or before the above referenced due dates, the unpaid amount outstanding on this Note shall commence to bear interest as of such due date at a rate equal to the sum of five percent (5%) plus the Prime Rate, adjusted as of each change of the Prime Rate until such funds are collected. All interest shall be computed for the actual number of days elapsed on the basis of a year consisting of three hundred and sixty five (365) days. The term "Prime Rate" as used in this Note shall mean, as of the date of any determination, the rate as published in the Wall Street Journal, or if the Wall Street Journal ceases publishing such rate, in some other similar financial publication as reasonably chosen by Lender.

Borrower hereby waives presentment, demand, notice of dishonor and protest.

This Note constitutes purchase money financing under that certain Purchase and Sale Agreement dated March 16, 2006, as amended, by and between Borrower, as purchaser, and Lender, as seller (the "Contract"). In connection therewith and to secure payment of the obligations contained herein, Borrower hereby irrevocably pledges, assigns, transfers, conveys and sets over to Lender and hereby grants to Lender a first and paramount lien on and security interest in and to the Inventory Homes and Home Mortgage (each defined in the Contract) identified on Exhibit A attached hereto (collectively, the "Collateral"). Borrower shall perform any and all acts requested by Lender to establish, maintain and continue Lender's security interests and liens in the Collateral, including but not limited to, executing financing statements and such other instruments and documents when and as reasonably requested by the Lender. Borrower hereby authorizes Lender through any of Lender's employees, agents or attorneys to file any and all financing statements, including, without limitation, any continuations, transfers or amendments thereof required to perfect Lender's security interest and liens in the Collateral under the UCC without authentication or execution by Borrower. Furthermore, in connection

with the security interest granted herein and as a matter of convenience, Lender (or its affiliate) shall remain in title to the Collateral.  Notwithstanding the foregoing, Borrower shall be responsible to maintain the Inventory Homes and use its good faith efforts to keep the same free from damage and/or waste, failing which shall constitute an Event of Default hereunder.  In the event an Inventory Home is sold or a Home Mortgage paid off, all of such funds shall be paid to Lender and the outstanding principal amount shall be reduced by the same amount.  At such time (but only after having received such funds), Lender will release the certificate of title for any such Inventory Home or issue a release of any such Home Mortgage, as the case may be and all at Borrower's expense; provided, however, if an Event of Default exists, Lender shall have no such obligation.

The occurrence of any one of the following events shall constitute an "Event of Default" by the Borrower under this Note:

(a)  Borrower fails to pay any amount as provided for herein on or before the stated due dates;

(b)  a voluntary petition under Chapter 7 or 11, United States Bankruptcy Code, or any similar case law or regulation shall be filed by Borrower, or if Borrower shall make an assignment for the benefit of its creditors or if any case or proceeding is filed by Borrower for its dissolution or liquidation; or

(c)  if an involuntary petition under Chapter 7 or 11, United States Bankruptcy Code, or any similar case law or regulation shall be filed against Borrower, and such petition or proceeding shall not be dismissed within 60 days of its filing, during which time Borrower shall be diligently contesting such petition or proceeding.

This Note shall be governed by the laws of the State of Illinois.  Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision, or the remaining provisions of this Note, or any other agreement between Borrower and Lender.

Upon the occurrence of an Event of Default, Lender may, in its sole discretion, without notice to Borrower declare all of Borrower's liabilities under this Note due and payable immediately and may immediately proceed against Borrower.  Borrower agrees to pay, upon Lender's demand therefore, any and all reasonable costs, fees and expenses (including attorneys' fees, costs and expenses) incurred in enforcing any of Lender's rights hereunder, and to the extent not paid the same shall become part of Borrower's liabilities hereunder.

All of Lender's rights and remedies under this Note are cumulative and non-exclusive. The acceptance by Lender of any partial payment made hereunder after the time when any of Borrower's obligations hereunder become due and payable will not establish a custom, or waive any rights of Lender to enforce prompt payment thereof.  Lender's failure to require strict performance by Borrower of any provision of this Note shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.  Any waiver of an Event of Default hereunder shall not suspend, waive or affect any other Event of Default hereunder.

BORROWER AND LENDER IRREVOCABLY AGREE THAT, ALL ACTIONS OR PROCEEDINGS IN ANY WAY OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS NOTE SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE CITY OF CHICAGO, STATE OF ILLINOIS.  BORROWER AND LENDER HEREBY CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN SAID CITY AND STATE AND WAIVE ANY OBJECTION THEY MAY HAVE BASED ON IMPROPER VENUE OR FORUM NON CONVENIENS TO THE CONDUCT OF ANY PROCEEDING HEREUNDER.

BORROWER AND LENDER IRREVOCABLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING: (I) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS NOTE OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH; OR (II) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS NOTE OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**BORROWER:**

MOBILE HOME PARK SERVICES, INC.,
a Georgia corporation

By:
Name:
Title:

# EXHIBIT B

 **LEVENFELD PEARLSTEIN, LLC**

2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
312.346.8380
Fax: 312.346.8434
www.lplegal.com

Keith A. Ross
312.476.7549
kross@lplegal.com

May 2, 2008

<u>VIA FEDEX AND VIA FACSIMILE – (706) 507-4290</u>

Mobile Home Park Services, Inc.
5964 Veterans Parkway
Columbus, Georgia 31909
Attn: Mr. Pat McKee

Re:     Yankee Springs Mobile Home Park, Yankee Springs, Michigan ("Yankee Springs")
        Our File Number  33186-61925

Dear Mr. McKee:

Reference is made to that certain Purchase and Sale Agreement dated March 16, 2006, as amended, by and between Mobile Home Park Services, Inc. ("Buyer") and Yankee Springs Meadow FSPE, LLC and Forest Estates FSPE, LLC (collectively, "Seller"). In connection with Buyer's acquisition of Yankee Springs, Yankee Springs Meadow FSPE, LLC ("Lender") provided Buyer with seller-financing in the amount of $533,572.52, evidenced by that certain Promissory Note and Security Agreement dated December 21, 2006 (the "Note"). Buyer's obligations under the Note are guaranteed by both yourself and Mr. William S. Dalton (each a "Guarantor" and, collectively, the "Guarantors") pursuant to those certain Guaranties of Mobile Home Park Services, Inc. each executed and dated December 21, 2006.

The Note has matured and has not been repaid. Accordingly, Buyer is in default thereunder. Demand is hereby made for payment of the balance due thereunder in the amount of $202,500.00 (the "Demand Amount") (which includes principal, interest and default interest accruing as of March 21, 2007 (the "Maturity Date" under the Note)). In addition to the principal and interest due under the Note, Buyer is responsible for paying all of Lender's out-of-pocket expenses (including, but not limited to, attorneys' fees) incurred by Lender in connection with enforcing Lender's rights and remedies under the Note.

This letter also constitutes notice and demand to both yourself and Mr. Dalton to satisfy the obligations of the Buyer under the Note in your capacities as Guarantors. In the event the Demand Amount is not paid in full to Lender by Friday, May 9, 2008, Lender will commence proceedings to collect the same against Buyer as well as yourself and Mr. Dalton in Cook County, Illinois, the jurisdiction all of the aforementioned parties have submitted to pursuant to the terms of the Note and the Guaranties.

In anticipation of your payment in full of the Demand Amount, attached hereto are wire instructions for payment of the same. Per diem interest on the Note (calculated at Prime + 5%) in the amount of $55.48 shall accrue from and after May 9, 2008 and added to the Demand Amount.

Please be advised that notwithstanding anything contained in this letter, including, but not limited to, the time given to cure the above-referenced defaults and events of default, this letter (1) does not in any manner constitute any waiver of either (a) any of Lender's rights, remedies and powers pursuant to (i) the

Mr. Pat McKee
May 2, 2008
Page 2

Note, (ii) the Guaranties, and (iii) any other agreement, document or instrument by and among Lender on the one hand and Buyer and/or the Guarantors on the other hand, or given, transferred or assigned by Buyer and/or the Guarantors to Lender; or (b) any default or event of default (whosoever such terms are defined) under the Note, the Guaranties and/or any other applicable agreement, document or instrument; or (2) is not to be construed as an agreement by Lender to allow any cure periods at a later date not specifically provided for in the Note, the Guaranties or any other applicable agreement, document or instrument.

As you are aware, this amount has been due as of the Maturity Date and notwithstanding Lender's forbearance from enforcing the Note (in an effort to work with Buyer), Lender is no longer in a position to extend any such accommodations to Buyer. Please govern yourself accordingly.

Very truly yours,

Keith A. Ross

KAR/klg
Enclosure

cc:    Mr. William S. Dalton (via fax – (918) 369-6208)
       Christopher L. Meacham (via fax – (706) 596-0621)

# WIRING INSTRUCTIONS

Bank of America, Chicago, IL

ABA# 0260-0959-3

Acct #: 86661-00270

Name: Hometown America, LLC

# EXHIBIT C

## GUARANTY OF MOBILE HOME PARK SERVICES, INC.
## LIABILITIES BY PATRICK MCKEE

**MOBILE HOME PARK SERVICES, INC.** ("Borrower") is or may become indebted to **YANKEE SPRINGS MEADOW FSPE, LLC** ("Lender"). The undersigned is a principal and/or shareholder of Borrower.

1. NOW, THEREFORE, for value received and in consideration of credit given or to be given or other financial accommodations from time to time afforded to Borrower by Lender, the undersigned hereby unconditionally guaranties the full and prompt payment and performance to Lender of any and all indebtedness, obligations and liabilities of every kind and nature of Borrower to Lender, whether at stated maturity, by acceleration or otherwise, however created, arising or evidenced, whether now existing or hereafter created or arising, whether direct or indirect, absolute or contingent, or joint or several, due or to become due and howsoever owned, held or acquired, including, but not limited to, the full and prompt payment and performance of all of the indebtedness, obligations and liabilities of Borrower (the "Liabilities") under that certain Promissory Note and Security Agreement dated the date of this Guaranty given by Borrower to Lender (said Promissory Note, as it may be amended and/or restated from time to time shall be referred to as the "Note"). The undersigned further agrees to pay all costs and expenses, legal or otherwise (including, but not limited to, court costs and attorneys' fees), paid or incurred by Lender in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this Guaranty and the Note (including, but not limited to, any attorneys' fees and costs in connection with any bankruptcy proceeding of Borrower or of the undersigned).

2. This Guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until any and all of said indebtedness, obligations and liabilities shall be fully paid. This Guaranty is a guaranty of payment and performance, not of collection. In case of any Event of Default (as defined in the Note), death, incompetency, dissolution, liquidation or insolvency (however evidenced) of, or the institution of any receivership proceeding or proceeding under the bankruptcy laws by either Borrower or the undersigned, or the institution of any involuntary bankruptcy petition against Borrower or the undersigned which shall not have been dismissed or withdrawn within 60 days after filing, any or all of the indebtedness hereby guarantied then existing shall, at the option of Lender, immediately become due and payable from the undersigned. Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect.

3. The liability hereunder shall in no event be affected or impaired by any of the following (any of which may be done or omitted by Lender from time to time, without notice to the undersigned): (a) any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, surrender, exchange, change in, modification or other disposition of any of said indebtedness, obligations or liabilities, whether express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor; (b) any acceptance by Lender of any security for, or other guarantors upon any of said indebtedness, obligations or liabilities; (c) any failure, neglect or omission on the part of Lender to realize upon or protect any of said indebtedness, obligations or liabilities, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Borrower possessed by Lender, toward the liquidation of said indebtedness, obligations or liabilities; (d) any application of payments or credits by Lender; (e) any release or discharge in whole or in part of any other guarantor of said indebtedness, obligations and liabilities; or (f) any act of commission or omission of any kind or at any time upon the part of Lender with respect to any matter whatsoever. Lender shall have the sole and exclusive right to determine how, when and to what extent application of payments and credits, if

any, shall be made on said indebtedness, obligations and liabilities, or any part of them.  In order to hold the undersigned liable hereunder, there shall be no obligation on the part of Lender at any time to resort for payment to Borrower or other persons or corporations, their properties or estates, or resort to any collateral, security, property, liens or other rights or remedies whatsoever.

4.  The undersigned acknowledges and agrees that the undersigned's liability pursuant to this Guaranty shall be and is joint and several with any other guaranty of said indebtedness, obligations and liabilities by any other person or entity, whether any such other guaranty now exists or hereinafter arises.

5.  The undersigned expressly waives presentment, protest, demand, notice of dishonor or default, and notice of acceptance of this Guaranty.  The undersigned hereby expressly waives any claim which the undersigned may have to indemnification, reimbursement, contribution or subrogation from Borrower of any of said indebtedness, obligations or liabilities for any amount paid by the undersigned pursuant to this or any other guaranty.

6.  Lender may, without any notice whatsoever to the undersigned, sell, assign or transfer all of said indebtedness, obligations and liabilities, or any part thereof, and, in that event, each and every immediate and successive assignee, transferee or holder of all or any part of said indebtedness, obligations and liabilities, shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder, as fully as if such assignee, transferee or holder were herein by name specifically given such rights, powers and benefits.

7.  Lender is authorized by the undersigned at any time and from time to time in its sole discretion, without demand or notice of any kind, to appropriate, hold, set off and apply, in such order of application as Lender, in its sole and absolute discretion, may from time to time elect, toward the payment of any amount due hereunder, whether now due or hereinafter arising, all moneys, credits or other property belonging to or in the name of the undersigned, at any time held by Lender, whether now being held or held in the future, on deposit or otherwise, and Lender is hereby granted a lien and security interest upon such moneys, credits or other property.

8.  No delay on the part of Lender in the exercise of any right or remedy under any agreement (including, but not limited to, this Guaranty) shall operate as a waiver thereof, including, but not limited to, any delay in the enforcement of any security interest, and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

9.  This Guaranty shall be governed by and construed in accordance with the laws of the State of Illinois applicable to contracts wholly executed and performed within the boundaries of that state.  Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. The recitals set out above are incorporated herein as an integral part of this Guaranty.  This Guaranty shall be binding upon the undersigned and the undersigned's representatives, successors, executors, heirs and assigns.

10. The undersigned represents and warrants to Lender that:  (a) the execution and delivery of this Guaranty, does not and will not contravene or conflict with any provisions of (i) law, rule, regulation or ordinance or (ii) any agreement binding upon the undersigned or the undersigned's properties, as the case may be; and (b) this Guaranty is the legal, valid and binding obligations of the undersigned,

enforceable against the undersigned in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights and remedies of creditors and except as the availability of equitable remedies is subject to judicial discretion; and (c) the financial statements and other information submitted by the undersigned (if at all) to Lender accurately present the financial condition of such person as of the date stated therein and there have been no material adverse changes in such financial conditions since those dates.

11. The undersigned covenants and agrees that the undersigned will furnish to Lender such information about the financial condition and affairs of the undersigned as Lender may from time to time reasonably request, all in form and manner satisfactory to Lender.

12. All notices and other communications required or permitted to be given to the undersigned or to Lender shall be done in accordance with the procedure set forth in the Note to the addresses set forth below the signature lines of this Guaranty. This Guaranty may be executed by original signature, facsimile and/or electronic signature.

13. The undersigned hereby acknowledges, agrees and consents to the terms and conditions of the Note, a copy of which has been received by the undersigned. The undersigned hereby acknowledges that (1) the undersigned has reviewed the Note; and (2) the undersigned has received good and valuable consideration to execute this Guaranty; and (3) Lender has recommended to the undersigned that the undersigned be advised by counsel in connection with the terms, execution and delivery of this Guaranty.

14. The undersigned acknowledges and agrees that except as specifically set forth in the Note or the last paragraph of this Guaranty, Lender makes no covenants to either Borrower or the undersigned, including, but not limited to, any other commitments to provide additional financing to Borrower.

15. THE UNDERSIGNED ACKNOWLEDGES THAT THE NOTE IS BEING SIGNED BY LENDER IN PARTIAL CONSIDERATION OF LENDER'S RIGHT TO ENFORCE THE TERMS AND PROVISIONS OF THIS GUARANTY IN THE JURISDICTION STATED BELOW. THE UNDERSIGNED CONSENTS TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN COOK COUNTY, ILLINOIS FOR SUCH PURPOSES AND WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND ANY OBJECTION THAT SAID COUNTY IS NOT CONVENIENT. THE UNDERSIGNED WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST LENDER IN ANY JURISDICTION EXCEPT THE AFORESAID COUNTY AND STATE. LENDER AND THE UNDERSIGNED HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER (A) THE UNDERSIGNED AGAINST LENDER OR (B) LENDER AGAINST THE UNDERSIGNED WITH RESPECT TO ANY MATTER WHATSOEVER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE GUARANTY AND/OR THE NOTE.

SIGNED AND DELIVERED by the undersigned at _Columbus, Georgia_ , this 21ST day of December, 2006.

_____
Patrick Mckee, Individually

Columbus, Georgia
Phone: 706-507-4289
Fax No.: 706-507-4290

08CV3139
JUDGE DARRAH
MAGISTRATE JUDGE COLE

# EXHIBIT D

## GUARANTY OF MOBILE HOME PARK SERVICES, INC.
## LIABILITIES BY WILLIAM S. DALTON

**MOBILE HOME PARK SERVICES, INC.** ("Borrower") is or may become indebted to **YANKEE SPRINGS MEADOW FSPE, LLC** ("Lender"). The undersigned is a principal and/or shareholder of Borrower.

1. NOW, THEREFORE, for value received and in consideration of credit given or to be given or other financial accommodations from time to time afforded to Borrower by Lender, the undersigned hereby unconditionally guaranties the full and prompt payment and performance to Lender of any and all indebtedness, obligations and liabilities of every kind and nature of Borrower to Lender, whether at stated maturity, by acceleration or otherwise, however created, arising or evidenced, whether now existing or hereafter created or arising, whether direct or indirect, absolute or contingent, or joint or several, due or to become due and howsoever owned, held or acquired, including, but not limited to, the full and prompt payment and performance of all of the indebtedness, obligations and liabilities of Borrower (the "Liabilities") under that certain Promissory Note and Security Agreement dated the date of this Guaranty given by Borrower to Lender (said Promissory Note, as it may be amended and/or restated from time to time shall be referred to as the "Note"). The undersigned further agrees to pay all costs and expenses, legal or otherwise (including, but not limited to, court costs and attorneys' fees), paid or incurred by Lender in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this Guaranty and the Note (including, but not limited to, any attorneys' fees and costs in connection with any bankruptcy proceeding of Borrower or of the undersigned).

2. This Guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until any and all of said indebtedness, obligations and liabilities shall be fully paid. This Guaranty is a guaranty of payment and performance, not of collection. In case of any Event of Default (as defined in the Note), death, incompetency, dissolution, liquidation or insolvency (however evidenced) of, or the institution of any receivership proceeding or proceeding under the bankruptcy laws by either Borrower or the undersigned, or the institution of any involuntary bankruptcy petition against Borrower or the undersigned which shall not have been dismissed or withdrawn within 60 days after filing, any or all of the indebtedness hereby guarantied then existing shall, at the option of Lender, immediately become due and payable from the undersigned. Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect.

3. The liability hereunder shall in no event be affected or impaired by any of the following (any of which may be done or omitted by Lender from time to time, without notice to the undersigned): (a) any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, surrender, exchange, change in, modification or other disposition of any of said indebtedness, obligations or liabilities, whether express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor; (b) any acceptance by Lender of any security for, or other guarantors upon any of said indebtedness, obligations or liabilities; (c) any failure, neglect or omission on the part of Lender to realize upon or protect any of said indebtedness, obligations or liabilities, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Borrower possessed by Lender, toward the liquidation of said indebtedness, obligations or liabilities; (d) any application of payments or credits by Lender; (e) any release or discharge in whole or in part of any other guarantor of said indebtedness, obligations and liabilities; or (f) any act of commission or omission of any kind or at any time upon the part of Lender with respect to any matter whatsoever. Lender shall have the sole and exclusive right to determine how, when and to what extent application of payments and credits, if

any, shall be made on said indebtedness, obligations and liabilities, or any part of them.  In order to hold the undersigned liable hereunder, there shall be no obligation on the part of Lender at any time to resort for payment to Borrower or other persons or corporations, their properties or estates, or resort to any collateral, security, property, liens or other rights or remedies whatsoever.

4.   The undersigned acknowledges and agrees that the undersigned's liability pursuant to this Guaranty shall be and is joint and several with any other guaranty of said indebtedness, obligations and liabilities by any other person or entity, whether any such other guaranty now exists or hereinafter arises.

5.   The undersigned expressly waives presentment, protest, demand, notice of dishonor or default, and notice of acceptance of this Guaranty.  The undersigned hereby expressly waives any claim which the undersigned may have to indemnification, reimbursement, contribution or subrogation from Borrower of any of said indebtedness, obligations or liabilities for any amount paid by the undersigned pursuant to this or any other guaranty.

6.   Lender may, without any notice whatsoever to the undersigned, sell, assign or transfer all of said indebtedness, obligations and liabilities, or any part thereof, and, in that event, each and every immediate and successive assignee, transferee or holder of all or any part of said indebtedness, obligations and liabilities, shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder, as fully as if such assignee, transferee or holder were herein by name specifically given such rights, powers and benefits.

7.   Lender is authorized by the undersigned at any time and from time to time in its sole discretion, without demand or notice of any kind, to appropriate, hold, set off and apply, in such order of application as Lender, in its sole and absolute discretion, may from time to time elect, toward the payment of any amount due hereunder, whether now due or hereinafter arising, all moneys, credits or other property belonging to or in the name of the undersigned, at any time held by Lender, whether now being held or held in the future, on deposit or otherwise, and Lender is hereby granted a lien and security interest upon such moneys, credits or other property.

8.   No delay on the part of Lender in the exercise of any right or remedy under any agreement (including, but not limited to, this Guaranty) shall operate as a waiver thereof, including, but not limited to, any delay in the enforcement of any security interest, and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

9.   This Guaranty shall be governed by and construed in accordance with the laws of the State of Illinois applicable to contracts wholly executed and performed within the boundaries of that state.  Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. The recitals set out above are incorporated herein as an integral part of this Guaranty.  This Guaranty shall be binding upon the undersigned and the undersigned's representatives, successors, executors, heirs and assigns.

10.  The undersigned represents and warrants to Lender that:  (a) the execution and delivery of this Guaranty, does not and will not contravene or conflict with any provisions of (i) law, rule, regulation or ordinance or (ii) any agreement binding upon the undersigned or the undersigned's properties, as the case may be; and (b) this Guaranty is the legal, valid and binding obligations of the undersigned,

enforceable against the undersigned in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights and remedies of creditors and except as the availability of equitable remedies is subject to judicial discretion; and (c) the financial statements and other information submitted by the undersigned (if at all) to Lender accurately present the financial condition of such person as of the date stated therein and there have been no material adverse changes in such financial conditions since those dates.

11. The undersigned covenants and agrees that the undersigned will furnish to Lender such information about the financial condition and affairs of the undersigned as Lender may from time to time reasonably request, all in form and manner satisfactory to Lender.

12. All notices and other communications required or permitted to be given to the undersigned or to Lender shall be done in accordance with the procedure set forth in the Note to the addresses set forth below the signature lines of this Guaranty. This Guaranty may be executed by original signature, facsimile and/or electronic signature.

13. The undersigned hereby acknowledges, agrees and consents to the terms and conditions of the Note, a copy of which has been received by the undersigned. The undersigned hereby acknowledges that (1) the undersigned has reviewed the Note; and (2) the undersigned has received good and valuable consideration to execute this Guaranty; and (3) Lender has recommended to the undersigned that the undersigned be advised by counsel in connection with the terms, execution and delivery of this Guaranty.

14. The undersigned acknowledges and agrees that except as specifically set forth in the Note or the last paragraph of this Guaranty, Lender makes no covenants to either Borrower or the undersigned, including, but not limited to, any other commitments to provide additional financing to Borrower.

15. THE UNDERSIGNED ACKNOWLEDGES THAT THE NOTE IS BEING SIGNED BY LENDER IN PARTIAL CONSIDERATION OF LENDER'S RIGHT TO ENFORCE THE TERMS AND PROVISIONS OF THIS GUARANTY IN THE JURISDICTION STATED BELOW. THE UNDERSIGNED CONSENTS TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN COOK COUNTY, ILLINOIS FOR SUCH PURPOSES AND WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND ANY OBJECTION THAT SAID COUNTY IS NOT CONVENIENT. THE UNDERSIGNED WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST LENDER IN ANY JURISDICTION EXCEPT THE AFORESAID COUNTY AND STATE. LENDER AND THE UNDERSIGNED HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER (A) THE UNDERSIGNED AGAINST LENDER OR (B) LENDER AGAINST THE UNDERSIGNED WITH RESPECT TO ANY MATTER WHATSOEVER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE GUARANTY AND/OR THE NOTE.

SIGNED AND DELIVERED by the undersigned at ___Tulsa___, ___Oklahoma___, this 21ST day of December, 2006.

William S. Dalton, Individually

Phone: 918-369-6200
Fax No.: 918-369-6208

4